# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MIGUEL A. COTRICH,**

                **Plaintiff,**

**-vs-**                                      **Case No.  6:05-cv-294-Orl-28KRS**

**B.C. GIBBART[1],**

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motions filed

herein:

| MOTION: | MOTION TO REOPEN THIS CASE FROM BACK 1994 EXPIDITE [SIC] EXHAUSTED MY REMADIES [SIC] AND SUING FOR DAMAGES (Doc. No. 18) |
|---|---|
| FILED: | March 11, 2013 |

| MOTION: | MOTION TO PROCEED *IN FORMA PAUPERIS* (Doc. No.  20) |
|---|---|
| FILED: | March 11, 2013 |

---

[1]   The original named Defendant in this action was "B.C. Gibbart," who, apparently, was the Veterans Service Center Manager at the St. Petersburg, Florida Regional Office of the Department of Veterans Affairs.  Doc. No. 12.  Based on other documents filed by Cotrich, it also appears that the correct spelling of his name is "Gibbard."  Because Cotrich's original complaint referred to him as "Gibbart," however, I will refer to him as "Gibbart" throughout this Report and Recommendation to avoid confusion.  With the motion to reopen his case, Plaintiff has changed the name of the Defendant to "S.L. Smith."  Smith is not identified in Plaintiff's newest filings, but it appears that he or she may be the current manager of the St. Petersburg Regional Office of the Department of Veterans Affairs.  Doc. No. 18-1 at 5 (letter addressed to "L.S. Smith," who is identified as the "manager from regional office" of the Department of Veterans Affairs in St. Petersburg).

| | |
|---|---|
| **MOTION:** | **MOTION THIS CASE IS FOR PERSONA[L] INJURY AND DAMAGES (Doc. No. 21)** |
| **FILED:** | **March 11, 2013** |

## I.     BACKGROUND.

Plaintiff, Miguel Cotrich, has been attempting to litigate claims related to military-service related injuries since at least 1994.  These claims all relate in some way to his service in the U.S. Marine Corps during 1975.  Because his various efforts to litigate those claims are relevant to my recommended disposition of his current motions, I summarize those actions below.

A.     *The Ivers Case.*

Cotrich's first case, *Cotrich v. Ivers*[2], Case No. 6:94-cv-287-Orl-19, was filed on March 10, 1994.  In that case, Cotrich complained about his failure to receive benefits from the Department of Veterans Affairs ("VA") and injuries he sustained following allegedly negligent surgeries performed by VA surgeons.  The Court dismissed Cotrich's claims for benefits because he had not shown that the Court had subject matter jurisdiction over those claims.  The Court also construed Cotrich's negligence claims as being brought under the Federal Tort Claims Act and gave Cotrich leave to file an amended complaint showing that he had exhausted his administrative remedies.  When he failed to do so, the Court dismissed the case in its entirety for lack of subject matter jurisdiction.  *See Ivers*, Doc. No. 29 (summarizing case history).[3]

---

[2]   Ivers was identified as an Adjudication Officer for the VA.

[3]   The Court can take judicial notice of documents filed in the *Ivers* case (and the *Nicholson* case, discussed below) pursuant to Fed. R. Evid. 201.  *See U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (court may take judicial notice of an order from another lawsuit for the limited purpose of recognizing the "judicial act" that the order

B.    *The Gibbart Case.*

More than a decade later, on February 24, 2005, Cotrich filed the instant action, captioned *Cotrich v. Gibbart*.  In this lawsuit, Cotrich renewed his complaints about his failure to receive benefits from the VA.  He also added allegations that his military personnel records were altered and/or falsified to show an incorrect date of discharge and a forged signature, that the VA committed "identity theft" by stating that his wife was a widow, and that the "Government" illegally obtained medical records from Beth Israel Hospital without Cotrich's authorization (which, according to Cotrich, violated the "Medical Information Privacy Act").  Cotrich also elaborated on various injuries that, he alleges, occurred as a result of his military service.  Doc. No. 1.  With his complaint, Cotrich filed a motion to proceed *in forma pauperis*.  Doc. No. 3.

I issued a Report and Recommendation recommending that the complaint be dismissed without prejudice for failure to state a claim upon which relief can be granted, that Cotrich be given leave to file an amended complaint, and that Cotrich's motion to proceed *in forma pauperis* be denied without prejudice to being refiled with an amended complaint.  Specifically, I noted that Cotrich had failed to identify the role allegedly played by the named Defendant, B.C. Gibbart, and advised him that any amended complaint must clearly describe how each named defendant was involved in the violations alleged in the complaint.  Doc. No. 9.

Before the Court ruled on my Report and Recommendation, Cotrich filed a document titled, "The Amended Complaint Statement of the Case."  Doc. No. 12.  On March 25, 2005, the Court adopted my Report and Recommendation and dismissed Cotrich's original complaint without prejudice.  Noting that Cotrich had already filed an amended complaint, the Court also

---

represents or the subject matter of the litigation).

gave him permission to file a renewed motion to proceed *in forma pauperis*.  Doc. No. 14.

Cotrich did not immediately file a renewed motion to proceed *in forma pauperis*[4], and his case

remained closed.

      *C.     The Nicholson Case.*

      Rather than filing a renewed motion to proceed *in forma pauperis*, on November 17, 2006,

Plaintiff filed yet another action, this one captioned *Cotrich v. Nicholson*[5], Case No. 6:06-cv-1772-

Orl-19JGG.  Cotrich renewed his complaints that his military records had been altered/falsified,

that he had been denied benefits, and that the VA had committed "identity theft" by stating that he

was dead.  *Nicholson,* Doc. No. 1.  Again, Cotrich filed a motion to proceed *in forma pauperis*.

The Court denied Cotrich's motion to proceed *in forma pauperis* and dismissed Cotrich's

complaint against Nicholson without prejudice because, among other things, he had failed to

establish subject matter jurisdiction over his claim for benefits, he had not alleged that he had

exhausted his administrative remedies with respect to his claim that his military records had been

altered/falsified, Cotrich had sued the wrong party with respect to his claim that his military

records were incorrect, his claim regarding his military records was likely barred by the statute of

limitations, and he had not stated a claim for identity theft.  *Nicholson*, Doc. No. 10.  The Court

gave Cotrich leave to file an amended complaint.  Cotrich failed to do so, and the Court dismissed

the case without prejudice on January 12, 2007.  *Nicholson*, Doc. No. 13.

---

     [4]  Indeed, Cotrich did not file a renewed motion to proceed *in forma pauperis* until March 11, 2013 – almost *eight (8) years* after the Court's Order.  Doc. No. 20.

     [5]  The Defendant, R. James Nicholson, was apparently the Secretary of Veterans Affairs.

One week later, Cotrich filed a "Motion of an Amended Complaint," providing an additional explication of his claims. *Nicholson*, Doc. No. 15. The Court interpreted this as a motion requesting that Cotrich be allowed to file an amended complaint and granted that request. *Nicholson*, Doc. No. 16. Cotrich then filed an amended complaint on February 2, 2007. *Nicholson*, Doc. No. 17. The amended complaint included factual allegations that were nearly identical to those previously submitted to the Court. The Court dismissed Cotrich's amended complaint because it failed to address any of the deficiencies in the original complaint and gave him an additional ten (10) days to file a second amended complaint. However, the Court noted:

> In the instant case, the Court has consistently given Plaintiff the benefit of the doubt, assumed that he is attempting to comply with the Court's orders, and granted him leave to amend his Complaint. Each time Plaintiff has attempted to amend his Complaint, he has failed to comply with the Court's orders . . . . Plaintiff's filings that fail to conform to this Court's orders serve no purpose other than delay. The Court has previously warned Plaintiff that failure to comply with its orders could result in an involuntary dismissal. Because *pro se* complaints must be liberally construed, the Court will grant Plaintiff a final chance to amend his Complaint to conform to the Court's Orders. However, if Plaintiff again fails to comply with the Court's Orders, Plaintiff's noncompliance may be determined to be willful and there may be a finding that no other sanction besides involuntary dismissal would be appropriate without further notice to Plaintiff.

*Nicholson*, Doc. No. 18 at 6-7 (internal citations omitted). When Cotrich failed to file a second amended complaint, the Court gave him another ten (10) days to file a second amended complaint. *Nicholson*, Doc. No. 19. Cotrich failed to file a second amended complaint following that order, and the Court dismissed Cotrich's case on March 19, 2007. *Nicholson*, Doc. No. 20.

   D.   *Attempts to Reopen the Ivers Case.*

More than a year later, Cotrich filed a "Complaint to Reopen My Civil Suit" and a "Motion for Additional Disability and Additional Damages" in the *Ivers* case. *Ivers*, Doc. Nos. 27

and 28.  The Court noted that his motions repeated the ailments about which he previously complained in the *Ivers* case and in the *Nicholson* case.  It denied the motions because the time for Cotrich to properly challenge the Court's 1994 dismissal had long since passed, Cotrich had not addressed the jurisdictional defects present in his 1994 action, and he continued to fail to assert a basis for the Court's jurisdiction to reopen his case.  *Ivers*, Doc. No. 29.  Cotrich again moved to reopen the *Ivers* case on November 8, 2010.  *Ivers*, Doc. No. 30.  The Court denied this motion because it, too, failed to assert any factual or legal basis for the Court to reopen the case.  *Ivers*, Doc. No. 31.

        E.      *Attempt to Reopen the Gibbart Case in 2012*.

More than a year-and-a-half after his most recent unsuccessful attempt to reopen the *Ivers* case, Cotrich filed a "Motion to Reopen My Case from 2/24/2005" in the instant case (the *Gibbart* case).  Doc. No. 15.  This motion was filed more than seven (7) years after the Court originally dismissed the *Gibbart* case and gave Cotrich leave to file an amended motion to proceed *in forma pauperis*.  The motion changed the named Defendant from "B.C. Gibbart" to "S.L. Smith" without any explanation of the change.  *Id.*  I denied that motion because Cotrich failed to file a renewed motion to proceed *in forma pauperis*, as required by the Court.  Doc. No. 16.  However, I noted that Cotrich could file a new lawsuit, accompanied by an application to proceed *in forma pauperis*.  *Id.*

        F.      *Current Attempt to Reopen the Gibbart Case.*

Now, some nine months later, Cotrich has filed another motion to reopen this case, which is styled as a motion to "reopen this case from back 1994" (an apparent reference to the *Ivers* case, which is made clear by Cotrich's inclusion of a copy of the docket sheet with the attachments to

his motion).  Doc. Nos. 18, 18-1.  Contemporaneously with the motion to reopen his case, Cotrich

also filed a motion to proceed *in forma pauperis*, and a document titled "Motion This Case is for

Persona[l] Injury and Damages."  Doc. Nos. 20, 21.  Cotrich's motions have been referred to the

undersigned and are ripe for decision.

## II.      MOTION TO REOPEN CASE.

Cotrich asks that the Court reopen his case, almost eight (8) years after it dismissed his

original complaint and gave him leave to file a renewed motion to proceed *in forma pauperis*.  His

motion to reopen the *Gibbart* case is largely styled as a new complaint, with "S.L. Smith" as the

Defendant named in the case caption.  Cotrich first notes that Judge Fawsett dismissed an earlier

case of his in 1994 because he had not exhausted his administrative remedies.[6]  It is apparent that

Cotrich is referring to the *Ivers* case because he attaches a copy of the *Ivers* case docket to his

motion.  Doc. No. 18-1 at 2-4.  Cotrich states that he is asking for damages from the "National

Personal Record Center"[7] in St. Louis and the Department of Veterans Affairs in St. Petersburg,

FL and then goes on to set forth the allegations he wishes to pursue in this lawsuit.

Contemporaneously with this motion to reopen, Cotrich also filed a document titled "Motion This

Case is for Persona[l] Injury and Damages."  Doc. No. 21.

Cotrich's motion offers no clear reason that would justify the Court reopening his case and

provides no explanation for the seven- to eight-year hiatus in this case.  However, in an abundance

_____

[6]  Cotrich attached a transcript of a hearing on August 26, 2003, before a Decision Review Officer at the Department of Veterans Affairs Regional Office in St. Petersburg, Florida.  Doc. No. 18-3.  He filed a transcript of another hearing held on March 15, 2012 before a Decision Review Officer.  Doc. No. 18-4.  The decision of the Decision Review Officer is not in the record before the Court.

[7]  Based on the attachments to Cotrich's motion, this appears to be a reference to the National Personnel Records Center.

of caution and because Cotrich is proceeding *pro se*, I recommend that the Court consider

Cotrich's motion to reopen the case and "Motion This Case is for Persona[l] Injury and Damages"

as Cotrich appears to have intended them – as an amended complaint – and rule on the merits of

Cotrich's motion to proceed *in forma pauperis*.[8]   However, as explained in detail below, I

recommend that Cotrich's renewed motion to proceed *in forma pauperis* be denied and that his

claims be dismissed without leave to amend.   Thus, ultimately, this case should remain closed.

### III.     MOTION TO PROCEED *IN FORMA PAUPERIS*.

A.     *Applicable Law.*

Pursuant to 28 U.S.C. § 1915(e)(2)(B), when a plaintiff seeks to proceed *in forma*

*pauperis*, the Court is required to consider whether the plaintiff's complaint is frivolous,

malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a

defendant who is immune from such relief.   *See also* Local Rule 4.07; *Mitchell v. Farcass*, 112

F.3d 1483, 1491 n.1 (11th Cir. 1997) (Lay, J., concurring) ("Section 1915(e) applies to all [in

forma pauperis] litigants – prisoners who pay fees on an installment basis, prisoners who pay

nothing, and nonprisoners in both categories.").   To state a claim on which relief may be granted,

a plaintiff's complaint must contain sufficient factual content to bring her claims "across the line

from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A

complaint is frivolous within the meaning of § 1915(e)(2)(B), if it "lacks an arguable basis either

in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   A complaint may be dismissed

as frivolous if an affirmative defense, such as expiration of the statute of limitations, would defeat

---

[8]   Throughout the remainder of this Report and Recommendation, I refer to the motion to reopen and the
"Motion This Case is for Persona[l] Injury and Damages" collectively as the "amended complaint."

the action.  *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 and n.2 (11th Cir. 1990) (citing several examples).

B.      *Cotrich's Claims.*

Cotrich's amended complaint (accompanied by voluminous attachments) is not entirely clear, but, reading his original complaint in conjunction with his amended complaint and all the additional documentation he has filed in this case, he appears to be pursuing the following claims: (1) when Cotrich's official military file was rebuilt, he was not given the opportunity to review the file and someone falsified his signature; Cotrich also complains that the rebuilt file contains inaccurate information (Doc. No. 18 at 2); (2) Cotrich's DD Form 214 was altered to reflect an inaccurate date of separation from military service (Doc. No. 1 at 2-3; Doc. No. 18 at 2); (3) Cotrich has not received military benefits despite attempts to obtain them (Doc. No. 18 at 2; Doc. No. 18-1 at 1); (4) the VA Regional Office in St. Petersburg stated that his wife is a widow, which amounts to identity theft (Doc. No. 1 at 2; Doc. No. 18 at 2; Doc. No. 18-1 at 5); (5) B.C. Gibbart tampered with Cotrich's medical records by taking out information so that Cotrich would not be entitled to military benefits (Doc. No. 18 at 2); (6) the VA Regional Office violated HIPAA when it obtained medical records from Beth Israel Hospital without obtaining a signed consent form from Cotrich (Doc. No. 1 at 2; Doc. No. 18-1 at 5); and (7) Cotrich was healthy when he entered the military, but is now totally disabled as a result of injuries that he incurred while on active duty (Doc. No. 21 at 2-3).  Cotrich seeks damages in the amount of $30 million.  Doc. No. 18 at 3.

Claims (1) through (4) were pursued in Cotrich's other lawsuits, both of which have been dismissed.  Claims (5) and (6) appear to be unique to this action.  With respect to Claim (7), in Cotrich's other lawsuits, he made general allegations that his time in military service had resulted

in his disabilities; however, he never stated as clearly as he has now that he is intending to pursue an action to recover for those injuries based on their connection to his time of service on active duty in the military.

>    C.    *Claims (1) and (2): Alteration/Falsification of Military Records*.

Cotrich pursued his claims that his official military file and DD Form 214 were altered and/or falsified in the *Nicholson* case.  In that case, the Court provided a lengthy discussion concerning the law that applies to complaints about the contents of military records.  *Nicholson*, Doc. Nos. 8 and 10.  Briefly, under the relevant law, complaints about the contents of Cotrich's military records are properly addressed to the Board of Correction of Naval Records ("BCNR"), not to the National Personnel Records Center and not to the VA or one of its managers.  The refusal of the BCNR to correct a military record is subject to judicial review and can be set aside if it is "arbitrary, capricious or not based on substantial evidence."  *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (citations omitted).  Generally, administrative remedies must be exhausted before denial of corrective action by the Board for Correction can be reviewed in federal court.  *See Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980); *Ballenger v. Marsh,* 708 F.2d 349, 350-51 (8th Cir. 1983).  Complaints seeking review in the federal courts must be filed no later than six years of the final decision by the military board.  *See Ballenger*, 708 F.2d 351 n.4 (citing 28 U.S.C. § 2401 and collecting cases).

In this case, the attachments to Cotrich's amended complaint (which are referred to in his amended complaint and are, thus, incorporated therein), make it abundantly clear that Cotrich had exhausted his administrative remedies to the BCNR at least as of March 2003 (Doc. 18-1 at 21: March 6, 2003 Letter from BCNR to Cotrich denying his application for correction of his military

record).  The statute of limitations for Cotrich to file a lawsuit related to this decision thus expired,

at the latest, six (6) years after the BCNR's denial of his request – that is, the statute of limitations

expired in 2009, some four (4) years ago.  Because it is apparent that a statute of limitations

defense would bar these claims, they are due to be dismissed as frivolous.[9]

Normally, *pro se* litigants should be given leave to amend their complaints.  Cotrich was

given multiple chances to file an amended complaint in the *Nicholson* case, which addressed

identical claims about alteration/falsification of military records.[10]  Despite being given those

chances, Cotrich never successfully amended his complaint to state a claim with respect to these

claims.  Moreover, given the expiration of the statute of limitations, it appears that there is no set

of facts that would allow Cotrich to plead these claims in a non-frivolous manner.  Because it

would be futile to allow Cotrich another opportunity to amend these claims, I recommend that

these claims be dismissed without leave to amend.

     D.     *Claim (3): Denial of Military Benefits*.

Cotrich pursued his claims about the denial of certain military benefits in the *Nicholson*

and *Ivers* cases.  As explained to Cotrich multiple times in those cases, this Court lacks

jurisdiction to review the denial of military benefits.  *See, e.g.*, *Nicholson*, Doc. No. 10 at 3.

Stated briefly, the sole remedy for denials of military benefits is via the review process set forth by

---

[9]  It also appears that these claims may be moot.  The essence of Cotrich's complaint about the altered/falsified military records was that they were causing the military to believe that he had been discharged on March 14, 1975 and not on May 26, 1975 (which, in turn, was leading to a denial of certain service-related benefits).  An attachment to Cotrich's amended complaint, however, states that this problem was fixed on May 5, 2011.  Doc. No. 18-1 at 1 (". . . been procrastinating on the dates of service 3/14/1975 since we put in my claim back in 10/10/1975 for 37 years my dates of service was a problem until it got fixed on 05/15/2011.").

[10]  Cotrich was also given an opportunity to file a renewed motion to proceed *in forma pauperis* in this case in 2005.  Rather than do so, he effectively abandoned this litigation by filing the *Nicholson* case.  He took no action in this case for more than seven (7) years, during which time the statute of limitations on these claims expired.

the Veterans Judicial Review Act, which is codified in various sections of Title 38 of the United

States Code.  All benefits decisions are subject to one appellate review by the Secretary of

Veterans Affairs.  38 U.S.C. § 7104.  After the Secretary's final decision, the veteran may appeal

to the Board of Veterans' Appeals.  *Id.*  The United States Court of Appeals for Veterans Claims

has exclusive jurisdiction to review the decisions of the Board of Veterans' Appeals.  38 U.S.C. §

7252.  The United States Court of Appeals for the Federal Circuit has jurisdiction to review the

decisions of the Court of Appeals for Veterans Claims under limited circumstances.  38 U.S.C. §

7292.  Because the statute does not provide for review by a District Court, this Court is without

jurisdiction to review the denial of Cotrich's military benefits.  Thus, Cotrich's claim for denial

benefits lacks any arguable basis in law and is due to be dismissed as frivolous and because the

Court lacks subject matter jurisdiction over it.[11]

Cotrich was given multiple chances to amend his complaint in the *Nicholson* case to

address this jurisdictional issue, but never succeeding in doing so.[12]  Given this history and the

Court's lack of subject matter jurisdiction over claims for military benefits, it appears that it would

be impossible for Cotrich to re-plead this claim in a non-frivolous way.  Accordingly, giving him

---

[11]  Moreover, it appears that Cotrich's claim for denial of benefits – at least insofar as it relates to his claim for service-connected disability benefits, as opposed to pension benefits – may be moot.  Attached to Cotrich's amended complaint is a letter Cotrich wrote to the VA in January 2013.  In the letter, Cotrich states, "I received a letter from the regional office on Nov 4. 2012 stating that they are compassionate of what happen to me but that they made a decision on my claim that they were going to grant me benefits on some or all of my benefits that I requested."  Cotrich goes on to state that he believes he should already have received a letter informing him of the benefits he would be receiving and a "check right after that."  Doc. No. 18-1 at 30.  This letter suggests that Cotrich's claim for service-connected disability benefits may have been granted.  If that were the case, Cotrich's claim for denial of these benefits would be moot, and the Court would lack subject matter jurisdiction over it.

[12]  He was also given an opportunity to file a renewed motion to proceed *in forma pauperis* in this case in 2005, but chose instead to abandon this litigation and pursue the *Nicholson* case.  As stated above, Cotrich did not file a renewed motion to proceed *in forma pauperis* for almost eight (8) years after being granted leave to do so by the Court.

leave to amend would be futile, and I recommend that the Court dismiss this claim without leave to amend.

      E.    *Claim (4): "Identity Theft" Related to Statement that Cotrich's Wife was a Widow.*

      This claim is somewhat opaque and not very well developed by Cotrich. Cotrich complains that the "Department Of Veterans Affairs Regional Office" has stated that his "wife is a widow under [his] V.A[.] file and Social Security number," which he interprets as "identity theft." Doc. No. 18 at 2; *see also* Doc. No. 1 at 2. Based on this description and other iterations of his complaint about the statement that his "wife is a widow" in the record (*see, e.g.,* Doc. No. 1-3 at 18-19), it appears that Cotrich is complaining about a letter he received from the VA, which stated, "We are unable to identify the veteran named in your correspondence. Please provide as much of the following information as possible. If you can, include a copy of the veteran's DD 214. *All data for a widow is under the veteran's VA file or Social Security number.*" Doc. No. 18-1 at 24 (emphasis added). The letter then included a form for Cotrich to fill out with information such as his name, date of birth, and service number. Cotrich's original complaint described this "identity theft" as being "illegal by the Constitution," but he has failed to identify any constitutional provision that has been violated. Doc. No. 1 at 2.

      When determining whether a complaint states a claim upon which relief can be granted, a court may consider documents that are referred to in the complaint and are central to the plaintiff's claim – such as the letter attached to the amended complaint that appears to form the basis of Cotrich's "identity theft" claim. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted). Where the allegations of a complaint are expressly contradicted by the plain language of an attachment to that complaint, the attachment controls, and

the complaint allegations are nullified.  *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F.

Supp. 2d 1325, 1341 (S.D. Fla. 2010) (citation omitted).  Moreover, when determining whether a

complaint states a claim upon which relief can be granted, the court is not required to accept

factual claims that are internally inconsistent.  *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D.

Fla. 1998) (citations omitted).  With respect to the question of whether a claim is frivolous, a

claim is factually frivolous if it is "clearly baseless."  *Denton v. Hernandez*, 504 U.S. 25, 32-33

(1992) (citing *Neitzke*, 490 U.S. at 325-28).  Factual allegations may be "clearly baseless" if they

are contradicted by other allegations in the complaint.  *See Battle v. Central State Hosp.*, 898 F.2d

126, 130 n.3 (11th Cir. 1990).

        This claim does not state a claim upon which relief may be granted and appears to be both

factually and legally frivolous.  First, the letter referenced by Cotrich does *not* state that his wife is

a widow.  Instead, it is a form letter designed to enable the VA to locate records about a veteran

and notes that data about a widow would be maintained under the veteran's VA file or Social

Security number.  When considered in light of the actual text of the letter, the well-pleaded

allegations of Cotrich's amended complaint do not establish that the VA ever did refer to his wife

as a widow – let alone that such action gave rise to liability.  Doc. No. 18-1 at 24.  As such, this

claim fails to state a claim upon which relief can be granted and appears to be factually frivolous

because it has no arguable basis in fact.

        Second, this claim appears to be legally frivolous, as well.  As mentioned above, Cotrich

pursued this "identity theft" claim in the *Nicholson* case.  In that case, the Court noted that it was

unaware of any constitutional provision or case law construing the federal Constitution that

recognizes a claim for identity theft.  The Court gave Cotrich multiple opportunities to amend his

-14-

complaint in the *Nicholson* case, but Cotrich never successfully stated a claim for "identity theft." Cotrich continues to fail to identify any part of the Constitution that would prohibit saying (falsely) that his wife is a widow or, for that matter, "identity theft." As the Court noted in *Nicholson*, I am unaware of any constitutional provision or case law construing the federal Constitution that would allow for liability for the conduct Cotrich alleges. In addition, it is apparent that Cotrich has been aware of this "identity theft" claim since at least February 2005, when he filed his original complaint in this lawsuit – more than eight (8) years ago. Given the passage of so many years, it also appears more than likely that this "identity theft" claim is time-barred and, thus, that Cotrich's chances of success on it are slight. Accordingly, this claim appears to be legally frivolous.

Cotrich was given multiple chances to amend his complaint in the *Nicholson* case and has provided several iterations of it in this case. Nonetheless, he has not yet stated a claim upon which relief can be granted with respect to his claim that the VA referred to his wife as a widow. Moreover, it appears that this claim is factually and legally frivolous. Under these circumstances, I recommend that this claim be dismissed without leave to amend.

F.      *Claim (5): Tampering with Medical Records.*

Cotrich complains that VA employee B.C. Gibbart tampered with medical records by "taking medical information out of those records." Doc. No. 18 at 2. Again, the factual basis of this complaint is opaque, but reading Cotrich's references to this claim together, it appears that Cotrich learned that the VA was in possession of some medical records from Beth Israel Hospital for the first time in 1995. Doc. No. 1 at 2. Cotrich then requested copies of the records, but the VA did not provide the records for nine (9) years – that is, until 2004. *Id.*; Doc. No. 1-3 at 20;

Doc. No. 1-4 at 1.  Cotrich alleges that Gibbart removed a blood test that came out negative for Ankylosing Spondylitis from those records.  Doc. No 18 at 2.  Cotrich alleges that this was a "[v]iolation of the law for tampering with medical records" and that Gibbart did this "so they don't have to pay me Service connected compensation, and pension."  *Id.*

This claim is due to be dismissed for a number of reasons.  First, this claim appears to be factually frivolous.  When determining whether a claim is so "clearly baseless" as to be factually frivolous, the Court need not accept the plaintiff's allegations as true and may consider other filings made by a plaintiff.  *See Nails v. Franklin*, 279 F. App'x 899, 901 (11th Cir. 2008) (unpublished decision cited as persuasive authority) (finding a plaintiff's allegations to be "clearly baseless" in part because they were undermined by other allegations she had made in the case). Here, Cotrich's claim that Gibbart removed a blood test that came out negative for Ankylosing Spondylitis is contradicted by his original complaint and documents that were attached to (and incorporated into) his original complaint.  In the text of the original complaint, Cotrich discusses the medical records from Beth Israel Hospital and states, "then they released the Medical Records from Beth Israel Hospital what I found was the Blood results came out Negative for Ankylosing Spondylitis."  Doc. No. 1 at 2.  Likewise, in the voluminous records filed as attachments to his original complaint, Cotrich repeatedly references the medical records that he finally received from the VA in 2004 and repeatedly refers to a negative blood test for Ankylosing Spondylitis.  For example, on April 23, 2004, Cotrich sent a letter to the Navy, stating:

> The Veteran Administration Regional Office had denied my claim back in 1995 stated the reason was because I had Ankylossing Spondylitis back in 1974 I asked them for these records then I sent them a release Of Information so they could send me these records never comply with my request, 2004 I Threaten them with the Privacy Act then they gave me these Records they held it for 9 years . . . .The

-16-

> records show's on upon Admission they though[t] I had Anklyossing Spondylitis
> so therfor they would have to test me . . . . *The test Results of the Blood show's*
> *Negative for Anklyossing Spondylitis . . . .*

Doc. No. 1-4 at 1-2 (emphasis added).  Cotrich's statements cast serious doubt on the reliability of

his claim that Gibbart removed a negative blood test from his medical records, thereby suggesting

that this claim may be factually frivolous.

Second, it is apparent from Cotrich's filings that Cotrich had received copies of the Beth

Israel Records (and thus, was on notice of the test that Gibbart allegedly removed) at least as early

as April 2004 – almost nine (9) years before he filed his amended complaint.  Although Cotrich

has not identified a constitutional or statutory provision that would support his "medical record

tampering" theory of the case,[13] it seems likely that any such claim would be time-barred and,

thus, frivolous.[14]

As with Cotrich's other claims, it appears that this claim is likely frivolous and that leave

to amend would be futile in light of the probable statute of limitations problems.    Accordingly, I

recommend that he not be given leave to amend this claim.

---

[13]  Cotrich did attach documents entitled "The Law Pertaining To my case Violation of my Civil rights liberty
rights" and "The Law Pertaining to my Case" to the "Amended Complaint Statement of the Case" he filed in this case
in March 2005.  Doc. No. 12 at 3-7.  Those documents reference some criminal statutes related to the falsification of
records.  It goes without saying that Cotrich lacks standing to pursue a criminal cause of action.

[14]  As with Cotrich's claim for benefits, a part of this claim may also be moot.  From Cotrich's amended
complaint, it appears that his main concern regarding this "tampering" claim is that the removal of the negative blood
test was contributing to the VA's ongoing denial of his requests for service-related disability and pension benefits.
Doc. No. 18 at 2.  However, as described above, it appears that Cotrich may have recently been granted some service-
related disability benefits, which would effectively moot this claim and deprive the Court of subject matter jurisdiction
over it.

G.      *Claim (6): HIPAA Violation.*

Cotrich alleges that the Department of Veterans Affairs Regional Office (and/or B.C. Gibbart) obtained medical records from Beth Israel Hospital without his consent and that this action is a violation of the "Medical Information Privacy Act."  Based on other documents filed with Cotrich's amended complaint, it appears that he is attempting to assert a claim for violating the Health Information Portability and Accountability Act ("HIPAA").  *See* Doc. No. 18-1 at 5 (accusing Gibbart of violating HIPAA by failing to obtain a signed release from Cotrich to obtain medical records).  This claim is legally frivolous because there is no private cause of action under HIPAA.  *See Crawford v. City of Tampa*, 397 F. App'x 621, 623 (11th Cir. 2010) (unpublished opinion cited as persuasive authority) (citing *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006)).

Moreover, even if Cotrich is attempting to pursue some other cause of action with this claim, it is apparent from Cotrich's filings that he has known that the government was in possession of these medical records since 1995 (Doc. No. 1 at 2) and that the he has had copies of these records since at least 2004 (*see* Claim 5 discussion, *supra*).  Thus, any claims based on the alleged impropriety of the way in which these medical records were obtained is likely time-barred under any other theory of relief.

Given the lack of a private cause of action under HIPAA and the likelihood that Cotrich's claims are time-barred, it would be futile to allow him to amend this claim, and I recommend that he not be given leave to do so.

H.      *Claim (7): Injuries Suffered on Active Duty.*

Finally, Cotrich asserts that he is seeking damages for injuries he suffered on active duty. Essentially, Cotrich alleges that his time in the military caused him to contract a number of

illnesses, which in turn caused his serious disabilities.  For example, he alleges that he was exposed to contaminated water and Agent Orange and that he "caught" Diabetes Mellitus Type II and a "bacterial illness" called Ankylosing Spondylitis while he was in the military.   Doc. No. 21. Although Cotrich has described these injuries in his other cases, he has never so clearly stated that one of the bases of his claims is that he should be compensated for injuries that he suffered on active duty.  Here, he does so explicitly, stating, "Personal injuries while in activ[e] duty."  *Id.* at 3.

Based on this allegation, Cotrich is seeking to pursue a tort claim based on injuries that arose during his time on active duty.  None of the potential defendants explicitly named in his amended complaint – S.L. Smith, the National Personnel Record Center, and the VA – would be liable for such a claim.  Rather, it is apparent that this is a claim that would properly be brought against the United States pursuant to the Federal Tort Claims Act, if it could be brought at all. However, such claim is absolutely barred by the *Feres* doctrine.  Under that doctrine, members of the armed forces may not recover under the Federal Tort Claims Act for personal injury or death if their injuries arose out of or in the course of activity incident to service.  *Feres v. United States*, 340 U.S. 135, 146 (1950).  Moreover, even if this claim could be read, not as a federal tort claim against the United States, but rather as a *Bivens*-type claim for constitutional violations committed by a federal agent, it would also be barred under the *Feres* doctrine.  *See United States v. Stanley*, 483 U.S. 669, 684 (1987) ("[N]o *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service").  As stated, Cotrich's claim falls squarely within the *Feres* doctrine.  It therefore lacks any arguable legal basis, is frivolous, and should be dismissed.

Again, I recommend that Cotrich not be given leave to amend this claim.  Cotrich has, in one way or another, been complaining about the injuries he suffered in the military since at least 2005.  He has had multiple chances to state a viable theory of recovery, but has not done so.  Moreover, given the limits of the *Feres* doctrine, it does not appear that Cotrich can re-plead this claim in a non-frivolous way.

      I.       *Claims Against S.L. Smith.*

To the extent that Cotrich's amended complaint intends to pursue all of his claims against S.L. Smith as a Defendant, those claims are due to be dismissed for the reasons stated above.  To the extent that Cotrich wishes to pursue some other, unstated claims against Smith, Cotrich's amended complaint fails to identify any alleged wrongdoing by Smith – just as Cotrich's original complaint failed to allege any wrongdoing by the original named Defendant, B.C. Gibbart.  Without any such allegations, Cotrich's amended complaint fails to state a claim upon which relief may be granted as to Smith and is due to be dismissed with respect to any claims against Smith.  In my Report and Recommendation on Cotrich's original motion to proceed *in forma pauperis*, I informed him that any amended complaint must clearly describe how each named defendant was involved in the violations alleged in the complaint.  Doc. No. 9.  Cotrich has failed to do so with respect to Smith.  In such circumstances, giving Cotrich leave to amend to re-plead any as-yet-unstated claims against Smith would futile, and I recommend that the Court not give Cotrich leave to file an amended complaint with respect to any claims against Smith.

**IV.     RECOMMENDATION.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court:

(1)     **DENY** Cotrich's "Motion to Reopen This Case from Back 1994 Expidite [sic] Exhausted My Remadies [sic] and Suing for Damages" (Doc. No. 18),  Motion to Proceed *In Forma Pauperis* (Doc. No. 20), and "Motion This Case is for Persona[l] Injury and Damages" (Doc. No. 21);

(2)     **DISMISS** Cotrich's claims without leave to amend;

(3)     **TERMINATE** all other motions pending in this case; and

(4)     **DIRECT** the Clerk of Court that this case should remain closed.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 18, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

-21-